CARLOS S. QUINATA, Plaintiff-Appellee

v.

JONES & GUERRERO COMPANY, INC., NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, and VIRGILIO M. CORDOVA, Defendants-Appellants

Civil No. 76-022A

District Court of Guam

Appellate Division

June 1, 1977

Before DUENAS and WONG, *District Judges*, and HEFNER, *Designated Judge**

PER CURIAM

OPINION

In the early morning hours of January 8, 1974, while it was still dark, the plaintiff and appellee, Carlos S. Quinata, was driving to work in his personal automobile. The road upon which Quinata was driving was under construction and although not required to, he chose to drive on the left-hand side of the road because it was smoother than the right-hand side. There was no traffic except one vehicle (driven by one Sanchez) in front of Quinata which proceeded up the road in the right lane. Quinata traveled in the left lane at a speed of 25–30 miles per hour for three minutes prior to the collision which resulted in his injuries. The Sanchez vehicle passed the vehicle driven by co-defendant, Virgilio M. Cordova, which was to the side of the road on the left facing the Sanchez vehicle. As Cordova continued down the road in the opposite direction of the Sanchez and Quinata vehicles, he saw the lights of the Quinata vehicle approaching in his lane of traffic and stopped his vehicle just before the collision. Cordova was operating a piece of construction equipment known as a payloader. It had two front lights which were about six feet above the ground. Quinata did not see the payloader until he struck it head on. The payloader was owned by Jones & Guerrero Company and Cordova was an employee of the company.

* Designated pursuant to 48 U.S.C. Sec. 1424b.

The jury found that Quinata was twenty-five percent negligent, Cordova twenty-five percent negligent and Jones & Guerrero fifty percent negligent. Substantial damages were awarded plaintiff and the defendants appealed on several grounds.

■ There is no doubt that the plaintiff, Quinata, was negligent and in fact his own counsel concedes that issue since he was driving on the wrong side of the road at the time of the collision. The appellant asserts that the trial court erred in allowing an expert, Charles Woodall, to testify for the plaintiff and that the admission of his opinion regarding certain safety devices and equipment was prejudicial to the defendant.

A review of the transcript of the testimony convinces us that the only testimony which the jury could possibly have used to find Jones & Guerrero Company, Inc., negligent was that of Woodall.

■ Woodall, who is a safety manager for the U.S. Navy on Guam, testified that he was responsible for supervising the movement of heavy equipment on jobs under the control of the various Navy departments. (Tr. 180.) He further testified that he performs his job pursuant to Navy Regulations and the Occupational Health and Safety Act. (Tr. 182.) He had no control or jurisdiction over Jones & Guerrero Company, Inc., nor any other private contractor unless the private contractor was working for the Navy on a Navy construction job. (Tr. 182–183.) Nevertheless, the witness was permitted to testify that construction equipment is not to be moved after dark unless there are "buffer vehicles" with amber flashing lights in the front and back of the equipment. (Tr. 189.) It was the opinion of Woodall that in the case of the payloader which Cordova was driv-

ing, the ordinary standard of care required of people moving heavy equipment was not met.

Sergeant Sablan, Assistant Commissioner of the Traffic Division, Department of Public Safety, Government of Guam, testified that there were no statutes, rules or regulations requiring any other lights than those on the payloader. (Tr. 314.) This fact was conceded to by plaintiff's counsel (Tr. 311).

It is abundantly clear that whatever opinion Woodall gave was based upon Navy Regulations and the Occupational Safety and Health Act (OSHA), 29 U.S.C. § 651 et seq., neither of which is applicable to the case at bar. The conclusion becomes inescapable that the expert testimony and the opinion expressed was erroneously admitted and highly prejudicial to appellant.

The only other possible theory of negligence which the jury could have accepted to impose liability on the defendants was the assertion by the plaintiff that Cordova should have driven further to his right and completely off the road when he saw Quinata approaching head on.

The payloader was traveling about 10–15 miles per hour (Tr. 117–118). The Sanchez vehicle safely passed the payloader at which time Quinata's vehicle was about one hundred fifty feet behind except it was in the left lane. Quinata saw the lights on the payloader (Tr. 218) but it ". . . seems to me like it was just lights from buildings on the left-hand side of the shoulder." Quinata denies seeing the payloader before the collision, never used his brakes and the crash was sudden. (Tr. 219.)

There was evidence that there was space to the right of the payloader to pull further off the road. (Tr. 72.) However, the only person who could shed light on the possibility of avoiding the accident, Cordova, demonstrates the failure of proof as far as the plaintiff is concerned:

421

"Q. And do you recall seeing Mr. Quinata's vehicle before the collision?

"A. Yes, sir.

"Q. Would you explain to the Court in your own words exactly what happened? Describe the few minutes before the incident took place in your own words.

"A. When I saw that the car—that the car is going this way, I just stopped, step on my brakes, then that's it. The accident was there already. (Tr. 119.)

"Q. I show you Exhibit 4 which shows where the police cars were; and in Exhibit 4, if you had thought of it, you could have moved to that side of the road, could you?

"A. No, sir.

"Q. You couldn't have. Why couldn't you have?

"A. I would do it if—It's already there. The car was already there.

"Q. Well, you had time to stop, did you?

"A. Yeah, that's—That's why what I had to do, just stopped.

"Q. Well, you had time to stop but you didn't have time to turn off the road?

"A. I don't know. But the condition to that already—" (Tr. 122).

After considering all the evidence which the jury had before it, including how the accident occurred, the speed of Quinata's vehicle and that of the payloader prior to its being stopped, it is concluded that there is no basis upon which the jury could have found Cordova negligent.

As appropriately pointed out by the appellant and appellee, it is not for the reviewing court to reweigh the evidence. In this case, however, there is simply no evidence that will support a finding of negligence on the part of the appellants. Therefore, no new trial will be granted.

In view of the above, the other matters raised on appeal by appellants do not require a determination by this court.

The judgment of the trial court is reversed.